· Minute Order Form (06/97)

ORIGINA

# United States District Court, Northern District of Illinois

J56

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 3111 | DATE | 4/13/2004 |
| CASE TITLE | Eleanore Coppage vs. Jo Anne B. Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Claimant's motion for summary judgment [17-1] is granted, and the Commissioner's motion for summary judgment [24-1]is denied. The decision of the ALJ is reversed and Claimant is awarded benefits based on an onset date of 03/23/2000, which is when Claimant first began complaining of back pains.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 14 2004 | |
| | Notified counsel by telephone. | | date docketed | 27 |
| | Docketing to mail notices. | | JXM | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/13/2004 | |
| DK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | DK | |
| | | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ELEANOR COPPAGE, on behalf )
of MICHAEL C. OSBORNE, )
a minor, in the claim of )
MICHAEL E. OSBORNE, deceased, )
)
        Plaintiff, )
)
        v. )
)
JO ANNE B. BARNHART, )
COMMISSIONER OF )
SOCIAL SECURITY, )
)
        Defendant. )

DOCKETED

APR 1 4 2004

Case No. 03 C 3111

Magistrate Judge Morton Denlow

## MEMORANDUM OPINION AND ORDER

Plaintiff, Eleanor Coppage ("Plaintiff" or "Coppage"), bringing suit on behalf of the

minor child of Michael E. Osborne ("Osborne" or "Claimant"), seeks judicial review of the

decision of Jo Anne B. Barnhart, the Commissioner of Social Security ("Commissioner"),

who found Claimant not disabled and denied him Social Security Benefits under 42 U.S.C.

§§ 416(i), 423. This case is before this Court on cross-motions for summary judgment.

Plaintiff argues that the Appeals Council erred in applying the wrong listing in reviewing

Claimant's claim, that the Administrative Law Judge ("ALJ") erred in failing to adopt the

opinion of Claimant's examining physician, that the ALJ's step five determination was not

supported by substantial evidence, and that the ALJ ignored evidence favorable to Claimant.

At oral arguments Plaintiff's counsel waived his objection to the Appeals Council's reliance



on listing 1.04. For the reasons stated below, Claimant's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied. The case is remanded to the Commissioner for an award of benefits based on an onset date of March 23, 2000.

## I. BACKGROUND FACTS

### A. PROCEDURAL HISTORY

Claimant filed an application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on May 13, 1999, alleging a disability effective as of June 2, 1998 due to sciatic nerve confusion from a gunshot wound. R. 115-17, 125, 254-56. The application was denied initially and upon reconsideration. R. 102-11. On January 26, 2000, Claimant filed a request for a hearing before an ALJ, which was granted on February 1, 2000.

On July 20, 2000, and March 27, 2001, after two postponements due to Claimant's inability to secure legal counsel, Claimant had a hearing before ALJ Lovert Basset, at which Claimant was represented by counsel. R. 44-101. At the hearing, Claimant and vocational expert ("VE") Meyer Klein testified. The ALJ denied Claimant's request for SSI and DIB on July 27, 2000. R. 16-31. Claimant's request for review was denied by the Appeals Council on March 10, 2003. R. 7-10. Consequently, the ALJ's decision became the final decision of the Commissioner. Claimant passed away in the interim. Coppage, the mother of Claimant's minor child, Michael C. Osborne, filed a timely complaint with this Court, on the child's behalf, for review of the ALJ's decision.

2

## B. HEARING TESTIMONY

### 1. Claimant's Hearing Testimony

Claimant was born on April 3, 1950 and was fifty years old at the time of the hearing. R. 115. Claimant worked for Brunswick Corporation for sixteen years in the mailroom and as an accounting analyst until June 2, 1998, R. 57, when he was laid off due to a corporate reorganization. R. 46. Claimant never returned to work. R. 57. Prior to his termination, Claimant had taken excessive breaks on the job, had missed work two to three times a month for doctor appointments, and had not been able to sit at his desk for long periods of time. R. 58. After Claimant was laid off, he decided not to look for another job because his health was getting worse. R. 46.

Claimant's first significant injury was in 1968 due to a gunshot wound in his right leg during the Vietnam War. R. 59. The injury resulted in sciatic nerve confusion. *Id.* As a result, Claimant could not stand for more than three or four minutes at a time. R. 60. Claimant also had a vascular surgery problem in his left leg, which prevented him from walking more than three-quarters of a block. R. 59. Claimant's right leg bothered him when he stood for too long, and his left leg troubled him when he walked. R. 60-61. Claimant could sit for about an hour before he had to stand, stretch his back, and walk because otherwise his leg would stiffen up. R. 61. He believed that he could lift about ten or twenty pounds but would get fatigued after lifting something heavy. *Id.*

3

In March 2000, Claimant went on a train trip to California. R. 63. While in California, Claimant drove from Los Angeles to Las Vegas in order to attend a family reunion with a friend, who did most of the driving. R. 64, 66. During the trip, Claimant injured his back, causing a disc herniation. R. 64-66. He did not know how he had injured himself, but he felt "tremendous back pains." R. 65.

Claimant was diagnosed with Hepatitis C in 1991. R. 67, 358. As a result, he suffered stomach problems and fatigue. *Id.* Additionally, Claimant took several strong medications for pain and high blood pressure. R. 324.

A normal day for Claimant consisted of waking up, taking pills for blood pressure and pain, eating breakfast, and laying down to sleep for several hours. R. 62. However, Claimant drove about ten miles a week and was able to feed and to bathe himself. R. 63. He also visited his mother daily for about fifteen to thirty minutes, and some friends would come to visit him occasionally. R. 70-71. Otherwise, Claimant had no social life. R. 71.

### 2. Vocational Expert's Testimony

Meyer Klein testified as the VE. R. 76-100. He classified Claimant's past mailroom and accounting clerk work as light and sedentary semi-skilled work. R. 80. The ALJ posed to the VE the following hypothetical: A worker who is forty-nine years of age has an eleventh grade education, has semi-skilled past relevant work, and has no transferable skills to other jobs. Further, he can lift twenty pounds occasionally and ten pounds frequently. The individual can stand and walk for one hour during an eight-hour shift but should not be

4

exposed to vibrations and must not climb stairs, ramps, ladders, ropes, or scaffolds. He should not be placed in a job situation that requires balancing, and he can crouch and crawl occasionally. R. 81-82.

The VE stated that such an individual is confined to sedentary work. R. 82. Such work would be assembly work or cashier work. R. 32-84. In order to determine the jobs available to Claimant, the VE utilized the Dictionary of Occupational Titles ("DOT") numbers. R. 82. There were 1,500 jobs for assembly work and 2,000 jobs for cashier work in the Chicago metropolitan area. R. 83. The VE also stated that, based on the hypothetical posed, and including the bookkeeping skills that Claimant had attained during his career, such a person would be able to perform some bookkeeping or billing clerk positions. R. 85-89. There were 2,500 such positions available in the Chicago metropolitan area. The VE did not have the DOT number for a billing clerk available at the hearing, but it was made available to Plaintiff's counsel and the ALJ before the ALJ's decision was rendered. R. 151.

On cross examination, The VE stated he used his judgment in order to make an estimation as to the 2,500 billing clerk jobs. R. 93. He stated that the number would actually be larger, but he limited it based on his understanding of Claimant and the use of his judgment. R. 93. Some sedentary jobs require no standing throughout the day. R. 94. However, if a worker could only stand for three or four minutes at a time that would compromise his ability to work at billing clerk or assembler jobs. R. 95. Also, spending over two hours per day laying down because of fatigue and pain would eliminate all substantial

gainful activity. R. 96. Being able to sit for less than six hours per day also would eliminate the sedentary work activity that generally exists. R. 98. The VE agreed that if the Claimant was required to take a five minute break every thirty to forty-five minutes in order to alleviate pain, then Claimant would be taking excessive breaks that an employer would not tolerate. R. 98-99.

## C.    MEDICAL EVIDENCE

### 1.    Nalini Ahluwalia, M.D. - Examining Physician

Dr. Nalini Ahluwalia performed a consultative examination of Claimant in September 2000. R. 355-58. Claimant's chief complaints were:

1) Hypertension for ten years that was medically controlled;

2) Lower back pain due to a herniated disc, which was diagnosed in March 2000;

3) A history of Hepatitis C, which was diagnosed in 1991; and

4) Pain in the left hip and both lower extremities since 1968.

*Id.*

An examination of the lower extremities revealed decreased sensation throughout the right posterior thigh. R. 357. This decreased sensation "extend[ed] from the right posterior thigh up to the bottom of the foot." *Id.* The left lower extremity was "minimally colder to touch" compared to the right. *Id.* There was also a "loss of tibialis posterior in the left foot," however the dorsalis pedis was palpable bilaterally. *Id.* Dr. Ahluwalia also found "atrophy

of the muscles of the left lower extremity." *Id.*

During the examination, Claimant was wearing a brace around the lumbosacral spine area where there was "mild tenderness." *Id.* An examination disclosed a gunshot entry wound in the left hip and a gunshot exit wound of the right hip. *Id.* The gunshot wound caused residual decreased sensation in the right lower extremity and involvement of arteries causing mild circulatory involvement on the left lower extremity, and some atrophy on the left lower extremity muscles. R. 358. The gait was found intact, there was minimal decrease in sensation in the right thigh and the motor system was intact. R. 357. Dr. Ahluwalia's impressions included: a history of Hepatitis C since 1991, hypertension that was under fair control, chronic lower back pain with a history of herniated disc, but no motor deficit due to the herniation. R. 358.

Dr. Ahluwalia submitted a Medical Source Statement of Ability to do Work-Related Activities (Physical) to the ALJ. R. 350-53. Dr. Ahluwalia opined that Claimant's limitations were: (1) occasionally lifting twenty pounds and frequently lifting ten pounds, (2) standing or walking less than two hours in an eight-hour workday, (3) sitting less than six hours in an eight-hour workday, (4) pushing or pulling limited in the lower extremities, and (5) no climbing or balancing, with only occasional crouching or crawling. R. 350-52.

### 2. Boyd E. McCracken, M.D., and, E.C. Bone, M.D. State Agency Physicians

Dr. Boyd McCracken and Dr. E.C. Bone evaluated Claimant's record in October 1999 and January 2000 respectively. R. 221-228; 102-03. In October 1999, Dr. McCracken

completed a Medical Residual Functional Capacity Assessment. R. 228. He concluded that Claimant could carry twenty pounds occasionally and ten pounds frequently, could stand for at least two hours and sit for six hours out of an eight-hour workday, had unlimited capacity to push or pull, and had some limitations in climbing. R. 222. Dr. Bone affirmed this opinion in January 2000 in a Disability Determination and Transmittal Report. R. 102-03. Neither of these doctors personally examined the Claimant.

### 3. Other Medical Treatments and Examinations

In June 1999, Claimant entered the Veterans Administration Hospital ("VA") complaining of right leg cramps after walking a half a block, with the pain growing worse over the previous three months. R. 152. In March 2000, Claimant was treated for lower back pain that radiated down the back of his legs. R. 334-35. The pain medication did not provide relief. *Id.* In April 2000, an x-ray revealed mild dextroscoliosis of the lumbosacral spine. R. 243. An electromyographic ("EMG") exam was performed and disclosed abnormal spontaneous activity in the left leg consistent with L5-S1 radiculopathy. R. 250. In June 2000, treatment notes refer to an MRI that indicates disc herniation at the lumbar spine L5-S1 with a disc bulge at L4-5, as well as degenerative disease at L5-S1. R. 344, 349. Claimant complained at that time of "back pain that irradiates to the back of his left leg." R. 344. However, Claimant was hesitant to have surgery. *Id.*

### D. ALJ's DECISION

The ALJ issued a decision on July 27, 2001. R. 16-31. He followed the familiar five-step disability analysis. At step one the ALJ found that the Claimant had not engaged in

8

substantial gainful activity since the alleged onset of disability. R. 30. At step two he determined the Claimant had the following severe impairments: peripheral vascular disease, status post gunshot wound, back pain, hypertension, and Hepatitis C. R. 21. At step three, the ALJ determined that the impairments did not meet or medically equal one of the listed impairments. R. 23-24. The ALJ determined at step four that Claimant had the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently, that he could stand and/or walk for one hour within an eight-hour workday, that he could sit for seven hours, that he could crouch or crawl occasionally, kneel frequently, but that he could not be "exposed to vibrations or climb ramps, stairs, ladders, ropes, scaffolds, or balance on uneven or slippery surfaces." R. 30.

At step five, the ALJ found that Claimant could not perform any past relevant work but that he had transferable skills from his previous work and that his RFC allowed him to do a significant range of sedentary work. R. 30-31. Examples of jobs the ALJ found Claimant able to perform included: a hand assembler, electric stem mounter, lamp shade assembler, cashier, and billing clerk. R. 31. The ALJ concluded that Claimant was not under a disability and therefore, was not entitled to benefits under the Act. *Id.*

The ALJ reasoned that Claimant had severe impairments including "peripheral vascular disease, status post gunshot wound, back pain, hypertension, and [H]epatitis C." R. 21. He noted that Dr. Ahluwalia believed that Claimant could stand less than two hours. R. 22. However, Dr. Ahluwalia gave no specific explanation for the restriction. *Id.* The

ALJ stated that

> there is no medical information from Dr. Ahluwalia that would oppose
> requiring [Claimant] to be on his feet for an hour. Furthermore, Dr. Ahluwalia
> does not necessarily rule out standing for a period of time which might be less
> than two hours. Thus, requiring [Claimant] to be on his feet for an hour is not
> explicitly forbidden by Dr. Ahluwalia.

*Id.* The ALJ also noted that Dr. Ahluwalia stated Claimant could only sit less than six hours

a day, however no explanation was given. *Id.*

The ALJ found that Claimant first began complaining of leg pain in June 1999 and

made his first complaints of back pain in March 2000. R. 25. After a year, Claimant was no

longer complaining of claudication type leg pains. *Id.* Claimant did, however, continue to

complain about his back. *Id.* Notes from a June 28, 2000 VA visit indicated that Claimant's

symptoms had improved. R. 26. The ALJ noted that Dr. Ahluwalia found that Claimant had

a history of chronic low back pain due to a herniated disc, however there were no motor

deficits. R. 26.

The ALJ also noted the gunshot wound Claimant suffered and the resultant nerve

damage. R. 25. However, he commented that the examinations "reveal that [Claimant] has

normal range of motion in all joints, normal gait without a need for assistive devices and

normal neurological findings." *Id.*

The ALJ also made note of Claimant's hypertension and Hepatitis C. R. 26. The ALJ

commented that the hypertension is under control. *Id.* Claimant complained of fatigue

connected to his Hepatitis C, however the medical evidence only indicated a few complaints

of fatigue in 1998 and that most of the medical evidence indicated that Claimant was feeling fine and had no serious complaints. *Id.*

The ALJ found Claimant's testimony about being bedridden "totally out of sync" with the case record. R. 27. The ALJ stated that the train trip to Los Angeles and the car trip to Las Vegas "are patently inconsistent with the rather extreme sitting and ambulatory limitations professed by [Claimant] and his claims of being a virtual invalid." *Id.* The ALJ found these activities to require extended sitting, standing, and ambulating. *Id.*

The ALJ also made personal observations about Claimant. R. 27. He commented that during the four times he observed Claimant, which were short-lived interactions, there was no obvious discomfort during sustained periods of sitting. *Id.* Further, Claimant walked "briskly from the hearing room" on the occasions that the ALJ observed him. *Id.*

The ALJ determined that Claimant had acquired skills transferable to the job of billing clerk that Claimant could perform such tasks as a billing clerk or other sedentary unskilled jobs recommended by the VE. R. 29-30.

## E. APPEALS COUNCIL DECISION

The Appeals Council denied Claimant's request for review on March 10, 2003. R. 7. The Council considered the reasons Claimant disagreed with the decision of the ALJ and found that the "information does not provide a basis for changing" the ALJ's decision. R. 8. The Council also considered regulations effective as of February 19, 2002, which implemented new listings for musculoskeletal impairments. *Id.* The Appeals Council stated that the "new regulations do not provide a basis to change" the ALJ's decision. *Id.*

## II. LEGAL STANDARDS

### A.   STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1995).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A mere scintilla is not enough. *Id.* Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if the "reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

A reviewing court may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal

standards in reaching his decision and whether there is substantial evidence to support the findings. *Id.*; *Scivally*, 966 F.2d at 1075. The reviewing court has the power to enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.   DISABILITY STANDARD

An individual is disabled if that individual has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, a disabled individual is eligible for both DIB and SSI benefits only if that individual is under a disability. *Id.* §§ 423(a), 1382(a)(3)(B). An individual is under a disability if she is unable to do her previous work and can not, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A).

The Commissioner uses a five-step sequential process in order to determine if an individual is disabled. 20 C.F.R. § 404.1520(a). The sequential evaluation ends if the ALJ, at any step of the process, finds that the claimant is not disabled. *Id.* The ALJ must inquire: (1) whether the claimant is working in any substantial gainful activity, (2) whether the claimant's impairment is severe, (3) whether the impairments meet or equal a listed impairment in 20 C.F.R., pt. 404, subpt. P, Appendix 1, (4) whether the claimant is able to

perform his past relevant work, and (5) whether the claimant's age, education, and past relevant work experience in reference to his residual functional capacity, enables him to do other work. *Id.* § 404.1520(a)(4)(i)-(v). In order to determine whether the claimant can perform any past relevant work (step 4), the ALJ assesses the claimant's residual functional capacity ("RFC"). *Id.* § 404.1520(e). The RFC is defined as the most that an individual can do after considering the effects of physical and mental limitations that affect his ability to perform work-related activities. *Id.* § 404.1545. The burden of proof is on the claimant through step four; the burden shifts to the Commissioner only at step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). At step five of the disability analysis, the Commissioner has the burden of proving that the Claimant has the ability to engage in other work existing in significant numbers in the national economy. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

## C.   CREDIBILITY DETERMINATIONS AND ARTICULATION

Credibility determinations of the ALJ are given particular weight and will be reversed only if patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). A court can not properly sustain an ALJ's credibility findings regarding pain that are supported by incorrect information or illogical reasoning. *Ynocencio v. Barnhart*, 300 F. Supp. 2d 646, 654 (N.D. Ill. 2004)

If the ALJ rejects an entire line of reasoning, he must give his reasoning in order to provide for a meaningful review. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). "In

the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is 'substantial' only when considered in isolation." *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984). The ALJ is not required to discuss his reasons for rejecting every piece of evidence; he must, however, discuss the claimant's evidence that contradicts the Commissioner's position. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001). The required level of articulation is heightened when there is conflicting evidence. *Hodes v. Apfel*, 61 F. Supp. 2d 798, 807 (N.D. Ill. 1999) (citing *Amax Coal Co. v. Beasley*, 957 F.2d 324, 327 (7th Cir. 1992)).

## III. ANALYSIS

Claimant presents three principle issues on review: 1) whether the ALJ erred in failing to adopt that portion of the opinion of Dr. Ahluwalia that limited Claimant to sitting for less than six hours in an eight-hour workday, 2) whether the ALJ ignored evidence favorable to the Claimant and failed to properly consider Claimant's pain, and 3) whether the ALJ's step five determination was supported by substantial evidence. This Court will discuss each in turn.

## A. THE ALJ ERRED IN FINDING THAT CLAIMANT COULD SIT FOR SEVEN HOURS IN AN EIGHT HOUR WORKDAY

Three physicians rendered opinions concerning Claimant's ability to sit in the workplace. The state agency physicians agreed that prior to his back injury Claimant could sit for six hours, but not more, in an eight-hour workday. The examining physician determined that, after the onset of the back injury, Claimant could sit less than six hours in

15

an eight-hour workday. The ALJ determined that the Claimant could sit for seven hours in an eight-hour workday. No physician or report supports this conclusion. This case turns on the interpretation and acceptance of the conclusions reached by Dr. Ahluwalia after his examination of Claimant. Plaintiff contends that the ALJ was required to adopt the opinion of Dr. Ahluwalia in his evaluation of Claimant's RFC. The Commissioner argues that the ALJ properly used his discretion to reject portions of the opinion of Dr. Ahluwalia.

The determination of a claimant's RFC is reserved for the Commissioner. 20 C.F.R. § 404.1527(e). In making a RFC determination, the ALJ generally must give greater weight to the opinion of an examining physician than to non-examining physicians. *See Id.* § 404.1527(d) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). However, medical evidence and opinions may be discounted if "specific, legitimate reasons constituting good cause are shown for rejecting" them. *Knight v. Charter,* 55 F.3d 309, 313 (7th Cir. 1995); SSR 96-5p, 1996 WL 374183, at *4. ALJs are required to "weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5.

Dr. Ahluwalia opined that Claimant was limited to walking and/or standing for less than two hours and limited to sitting less than six hours in an eight-hour workday. R. 350-52. According to this conclusion, Claimant would be limited to working less than a full eight-hour workday. Any physical limitation that prevents a claimant from working a full eight-

hour workday, not including lunch or reasonable breaks, is a disability under the Act. *Rousey v. Heckler*, 771 F.2d 1065, 1071 (7th Cir. 1985); *See* SSR 96-8p, 1996 WL 374184, at *1 (Claimant is not disabled if he is able to work a full day). There was no conflicting medical evidence with Dr. Ahluwalia's opinion. Both state agency physicians, prior to the onset of the back injury, concluded that Claimant could only sit for six hours in an eight-hour work day. Dr. Ahluwalia was the only physician to examine the Claimant after the onset of his back injury. It is reasonable that a severe back injury would further limit Claimant's ability to sit. Dr. Ahluwalia was in the best position to make a determination about Claimant's RFC. However, without explanation, the ALJ determined that Claimant could sit for seven hours and stand for one hour in an eight-hour workday. There was nothing in the medical record for the ALJ to deviate from Dr. Ahluwalia's assessment and make his own determination as to Claimant's ability to sit.

Dr. Ahluwalia was not Claimant's treating physician, but rather an examining physician sought out by the Commissioner to provide a Medical Source Statement to assist the ALJ in making his determination. Dr. Ahluwalia was an independent physician with no bias or allegiance to Claimant. The ALJ noted that DR. Ahluwalia's opinion was entitled to greater weight than that of the non-examining physicians. R. 26-27. However, the ALJ rejected Dr. Ahluwalia's conclusion that Claimant was limited to sitting for less than six hours in an eight-hour workday, and concluded that he could sit for seven hours.

In rejecting Dr. Ahluwalia's opinion and determining Claimant's limitations as to sitting, the ALJ looked to a trip that Claimant took in March 2000 from Chicago to Los Angeles. On that trip Claimant rode on a train, drove in a car, went to a family reunion in Las Vegas, and looked for a job. However, all of this occurred prior to the back injury that caused Claimant's herniated disc. Dr. Ahluwalia examined Claimant in September 2000, after Claimant returned from the trip. It is illogical to reject Dr. Ahluwalia's opinions and to determine that Claimant could sit for seven hours during a workday based on conduct prior to a major injury. On a train, Claimant would be able to stand, sit, walk around and sleep whenever needed. Taking a train trip is not inconsistent with Dr. Ahluwalia's opinion that Claimant could only sit for less than six hours in an eight-hour workday. Also, the ALJ should have considered that the injury occurred after the trip, and that such an injury could affect Claimant's ability to sit for a prolonged time during the day.

Further, the ALJ rejected Dr. Ahluwalia's opinion about Claimant's sitting limitation because Claimant testified that he drove ten miles per week. Concluding that Claimant was able to sit for seven hours in an eight-hour workday is simply not related to Claimant's ability to drive ten miles per week. Ten miles per week is not a significant distance and can be covered in under an hour. Being able to drive for ten miles per week is in no way inconsistent with Dr. Ahluwalia's conclusion that Claimant was limited to sitting for less than six hours in an eight-hour workday. The ALJ did not build an accurate and logical bridge from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

## B. THE ALJ IGNORED EVIDENCE FAVORABLE TO THE CLAIMANT AND FAILED TO PROPERLY CONSIDER CLAIMANT'S PAIN

The ALJ used his subjective observations and Claimant's testimony in order to determine that Claimant was not credible regarding his pain, while ignoring an EMG exam and other evidence indicating fatigue. There was medical evidence to support Claimant's complaints of pain. There was an EMG examination, which showed nerve root damage (radiculopathy) at L5 and S1. R. 250. This supports Claimant's testimony about the amount of pain he was in and why it was difficult for him to work a full day. The ALJ failed to discuss the EMG. An ALJ is required to discuss evidence that contradicts his opinion. *Godbey*, 238 F.3d at 808. Further, an ALJ must discuss the strongest piece of evidence. *See Brindisi ex. el. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (reversing and remanding because the ALJ did not discuss the strongest piece of evidence). Claimant testified that he could sit for an hour before feeling discomfort, he could stand for three to four minutes at a time, and he could walk three quarters of a block because either his legs or back were in too much pain. Nerve root damage could give rise to pain and be the reason Claimant had such limitations. In this case, the EMG directly supports Claimant.

Further, Claimant suffered from several different medical and health problems. If a Claimant has one or more severe impairments, the ALJ must "consider the *aggregate* effect of this entire constellation of ailments - including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (citing 20 C.F.R. § 404.1523). The ALJ did not consider all of Claimant's ailments in the aggregate. Claimant

suffered from Hepatitis C, a gunshot wound to his right hip and left leg, hypertension, and a disc herniation that caused nerve root damage at L5 and S1. The ALJ failed to discuss the effects of Claimant's Hepatitis C, which tends to cause fatigue. The ALJ did not discuss the side effects of Claimant's medication, which caused him to sleep for a large portion of the day. All of the symptoms in the aggregate indicate that Claimant suffered severe pain and other physical limitations. At the very least, the ALJ should have considered all of these potentially debilitating ailments in the aggregate.

## C.   THE VE TESTIMONY WAS SUFFICIENT AT STEP FIVE

Although this case will be reversed on the basis of the first two issues, this Court will discuss the remaining issue in the event of later review.

Plaintiff argues that the ALJ could not properly rely on the testimony of the VE to meet the Commissioner's burden of production at step five in the evaluation because the VE did not have sufficient and specific data to render an opinion. At step five, the Commissioner has "the burden of proving that there are jobs in the national economy that claimant can perform." *Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994). In his opinion, the ALJ adopted the VE's testimony and determined that Claimant was "capable of making a successful adjustment to work that exists in significant numbers in the national economy." R. 29.

Claimant stipulated to the VE's qualifications as an expert at the hearing. R. 76. The VE used his judgment and made an estimation that was based on a limitation not

contemplated by the DOT numbers in determining how many jobs he believed would be available for a billing clerk with the limitations set forth by the ALJ. An expert witness is not only called upon to simply recite information available in a text or document. If that were the case, ALJ's would not need to call vocational experts to testify because they would simply be able to go to the texts themselves and find the information needed pertaining to available jobs. Personal experience and judgment are a valid foundation for the VE's estimation. The ALJ was proper in adopting the testimony of the VE pertaining to the number of jobs available for Claimant.

## IV. CONCLUSION

For the reasons set forth in this opinion, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The decision of the ALJ is reversed and Claimant is awarded benefits based on an onset date of March 23, 2000, which is when Claimant first began complaining of back pains. SO ORDERED THIS 13th DAY OF APRIL, 2004.



**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

21

**Copies mailed to:**

Barry A. Shultz
LAW OFFICES OF BARRY A.
SCHULTZ, P.C.
1609 Sherman Ave., Suite 207
Evanston, IL 60201

Edward J. Kristof
Special Assistant United States Attorney
200 West Adams Street
30th Floor
Chicago, IL 60606

Counsel for Plaintiffs

Counsel for Defendants

# United States District Court
## Northern District of Illinois
### Eastern Division

Eleanor Coppage

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 03 C 3111

Jo Anne B. Barnhart

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The decision of the ALJ is reversed and Claimant is awarded benefits based on an onset date of 03/23/2000, which is when Claimant first began complaining of back pains.

Michael W. Dobbins, Clerk of Court

Date: 4/13/2004

Donna Kuempel, Deputy Clerk